## LIQUID CARBONIC CORPORATION v. GOODYEAR TIRE &. RUBBER CO.

No. 5633.

District Court, N. D. Ohio, E. D.

June 24, 1940.

On Rehearing March 13, 1941.

522

H. A. Toulmin, Jr. (of Toulmin & Toulmin), of Dayton, Ohio, and A. J. Hudson (of Kwis, Hudson & Kent), of Cleveland, Ohio, for plaintiff.

Luther E. Morrison (of Morrison, Kennedy & Campbell), of New York City, and A. C. Denison (of Baker, Hostetler & Patterson), of Cleveland, Ohio (R. H. Waters, of Akron, Ohio, and S. D. L. Jackson, Jr., of Cleveland, Ohio, of counsel), for defendant.

WILKIN, District Judge.

This case was submitted on motion by defendant for judgment on the pleadings. And it was subsequently resubmitted on petition for rehearing.

### As to the Motion

The bill of complaint, after alleging jurisdictional facts, sets forth three causes of action as follows:

(1) That the defendant's present and past method of curing tires under Freeman patent 2,066,265 is an infringement of the plaintiff's Minor patents 1,808,428 and 1,-808,429.

. (2) That defendant's Freeman patent 2,066,265 should be assigned to plaintiff by virtue of license agreement between the parties dated March 1, 1930; and because the methods covered by the Freeman patent were revealed and disclosed to the defendant by the plaintiff during a relationship of trust and confidence.

(3) That defendant's cancellation of the license agreement under date of November 30, 1934, was null and void because made in violation of plaintiff's rights under such license agreement and the relationship of trust and confidence and without disclosure of facts which plaintiff was entitled in equity and good conscience to know.

The bill prays an injunction against infringement of plaintiff's Minor patents; for an assignment of defendant's Freeman patent; for accounting of profits and damages; and for punitive damages by reason of the breach of trust and confidence.

The answer admits the jurisdictional facts alleged in the bill, admits ownership of the Minor patents by plaintiff, admits receipt of letters dated on or about February 12, 1937, and April 1, 1937, charging infringement of such Minor patents, admits that Henry H. Minor, inventor of the process covered by the Minor patents, visited defendant's plant at Akron, Ohio, in March, 1927, and subsequent thereto disclosed to defendant the use of carbon dioxide gas backed up with steam for the vulcanization of tires, and alleges that it went to great expense in carrying on experiments and tests in connection with such disclosures and demonstrations by Minor, but says that such experiments and tests were made solely at its own expense; that they proved impractical and unsuccessful; and that on or about May 25, 1931, it so informed Minor. The answer denies any relationship of trust or confidence, or that any disclosures were made in such relationship; admits the license agreement as set forth in the bill of complaint and Exhibits A, B, and C attached thereto; but alleges that the cancellation of such agreement (Exhibit D, bill of complaint) was proper and lawful and in strict compliance with such agreement. The answer further admits that on November 25, 1933, the defendant filed or caused to be filed in the

United States Patent Office applications for letters patent which duly matured into the Freeman patent 2,066,265 dated December 29, 1936; but denies that it was under any obligation to make any disclosures with reference to such patent to plaintiff. It alleges that the invention of such Freeman patent is radically and fundamentally different from that of the Minor patents; that such differences are apparent and obvious from a comparison of the patents; and that such differences have been recognized by the Patent Office in the issuance and reissue proceedings of such Freeman patent. The answer alleges that the plaintiff had full knowledge of the issuance of the Freeman patent; of the fact that defendant for several years prior had been practicing the steam-air process covered by such patent and had acquiesced in the understanding that said steam-air process was free and clear of any adverse rights of plaintiff, and that plaintiff had consented to cancellation of the license agreement as shown by Exhibit D of the bill of complaint. That a comparison shows that the Freeman patent does not come within the scope of either of said Minor patents and consequently not within the scope of the license agreement, and that therefore there is no infringement, no violation of the license agreement, and the cancellation is valid. The answer prays that the bill of complaint be dismissed.

Thereafter motion for judgment on the pleadings was filed and certified copies of the two Minor patents and the Freeman patent were submitted with such motion.

While the motion is referred to as one for judgment on the pleadings, it is, in reality, a motion to dismiss the bill because of its failure to state a claim upon which relief can be granted, or, in other words, it is a motion to dismiss because the bill and the exhibits fail to show facts which entitle the plaintiff to the relief sought. For the purposes of such motion, all material and pertinent allegations of the bill must be assumed to be true. If, in view of the answer, any issue of fact exists, there must be a trial.

It is the contention of the defendant that all three causes of action can and must be determined by a comparison of the Freeman and Minor patents; that all three claims of the plaintiff give rise to the same fundamental question: does the defendant's Freeman patent infringe either of the Minor patents?. If there is no infringement, the first cause of action is, of course, disposed of. If there is no infringement, so defendant contends, the second cause of action likewise falls, because, by the terms of the license agreement, all obligations of the defendant to the plaintiff were limited to improvements, inventions, or discoveries with respect to the Minor method of curing tires; that no relationship of trust and confidence could exist as to any invention independently developed by defendant and differing radically and fundamentally from that disclosed by plaintiff to defendant. And if there is no infringement, according to defendant, the third or alternative cause of action also fails because the process covered by the Freeman patent does not come within the provisions of the license agreement. Even if the license agreement should still be in force and effect, it would be no basis for the plaintiff's claim to the Freeman patent or any rights with reference to it.

The defendant does not depend exclusively, however, upon an interpretation of the terms of the patents. It claims that other facts revealed by the bill are equally fatal to the plaintiff's second and third causes of action:

(1) The bill of complaint and the exhibits show conclusively that there was no relationship of trust and confidence.

(2) If the Freeman patent were held to cover the same invention as that covered by the Minor patents the Freeman patent would for that very reason be invalid, because, as shown by the pleadings, it was applied for (November 25, 1933) more than two years after the date of the grant of the other patents (June 2, 1931). In such case the Minor patents themselves would afford plaintiff full protection without assignment of the Freeman patent.

(3) If Minor did actually disclose to defendant the process covered by the Freeman patent, that again would lead to the invalidity of the Freeman patent. The plaintiff would be protected under its own patents, and an assignment of the Freeman patent would be useless.

(4) The bill of complaint and the exhibits reveal no obligation on the part of the defendant to assign patents to the plaintiff. The license agreement mentions only "improvements, inventions, or discoveries with respect to the aforesaid method", i. e., the Minor method, and then it provides that the defendant shall do no

more than grant to the plaintiff·a license during the life of the agreement.

■ The allegations of the bill of complaint with regard to the second cause of action are too broad to allow a disposition of the case upon the assumptions and arguments of the defendant. Such a motion is more apposite to the first and third causes of action than to the second, because their allegations are more strictly confined to the pleadings and exhibits. But even if the motion were to be given favorable consideration with reference to those causes, still the court could not sustain the motion because the second cause of action alleges confidential relationship between the parties and disclosures made by the plaintiff to the defendant, and such allegations are denied in the answer. Paragraphs 10, 11, 12, 13 and 14 of the bill allege a confidential relationship induced by the defendant; that the plaintiff "taught the defendant herein the alternate use of steam and air as an alternative media for the practice of said methods and the patents in suit"; that this disclosure was made in confidence to the defendant; and that, in violation of an express promise to disclose improvements or developments, the defendant surreptitiously obtained a patent. In other words, plaintiff alleges that the defendant occupies the position of a trustee and holds title to the Freeman patent for the benefit of the plaintiff. These acts and this relationship are denied.

■ The court is unable to dispose of this issue upon the reasoning advanced by the defendant. This issue cannot be settled by a comparison of the patents. If the court should hold that the Freeman patent does not infringe the Minor patents, still the question might remain as to the equitable ownership of the Freeman patent. If property other than a patent were obtained as described in the bill, would it be asserted that the plaintiff had no equitable interest in it, or that a court of equity should not inquire into the relationship between the parties as affecting the ownership? There is nothing about patents to exempt them from such general equitable jurisdiction.

■ The defendant contends that "no relation of confidence or trust could exist with reference to any invention independently developed by the defendant and falling outside the scope of the disclosure of the Minor patents in suit". The complaint does not refer to an "invention independently developed". It describes an invention developed in cooperation with the plaintiff and as a result of confidential disclosures, etc. A determination of the validity of the Freeman patent would not necessarily be a full refutation of the allegations of the complaint.

■ Neither can this court sustain the contention of the defendant that an assignment would necessarily be vain and useless. The grounds for the assignment might not invalidate the Freeman patent; and if the Freeman patent is valid, the Minor patents themselves would not afford protection to the plaintiff. Such a conclusion is, of course, at variance with the allegation that the Freeman patent is an infringement of the Minor patents. But that is a variance or inconsistency in pleading which cannot be taken advantage of by motion for judgment on the pleadings. The defendant says: "If any such infringement exists, plaintiff's remedy is complete. If no such infringement exists, plaintiff is obviously entitled to no remedy". With the first sentence the court agrees; but, in view of the allegations of the bill, the court is unable to conclude at this time that the second statement is correct. The complaint and exhibits alone do not preclude the alleged relationship and disclosure.

To discuss the issues raised by the first and third causes of action would serve no good end now. Nor is the court determining the ultimate issue raised by the second cause of action. The court is merely determining at this time—since the bill states facts which if true would entitle the plaintiff to some equitable interest in the property and such facts are denied in the answer—that it is necessary for the court to overrule the motion for judgment on the pleadings.

As to the PETITION for REHEARING.

The consideration of a petition for rehearing is, to some extent, a rehearing. It has been so in this case. The court has carefully reviewed the pleadings, the motion for judgment on the pleadings, and the arguments. As counsel for defendant state, the actual trial will involve such a great amount of time and expense that it should be avoided if possible. The court has therefore given careful consideration to the things which the defendant thought had been overlooked or erroneously regarded.

■ At the outset the court agrees with the contention of counsel for defendant as

to the authority of the court to rule specifically and separately as to each statement of claim. As stated, the court on its own motion might consider each separate cause of action. And probably the court's memorandum of June 24, 1940, was not as specific in that regard as it should have been.

The court, however, arrives at the same conclusion regarding the second claim for relief. The allegations are too broad to be dismissed for "failure to state a claim upon which relief can be granted". The court is still unable to concur in the statement by the defendant that "if no infringement exists, plaintiff is obviously entitled to no remedy". That statement is based on the assumption that the claims of the Freeman patent and the alleged confidential disclosures are coextensive, within the same field and the same limits, and that therefore if the Freeman patent is free of the charge of infringement, the Freeman patent could not be the result of disclosures by the plaintiff. But the Freeman patent might possibly be found to be so specific as not to infringe the Minor patents but still within the generic scope of the Minor patents and the alleged disclosures of the plaintiff. In other words, the court can not say now that a finding of non-infringement would necessarily be a finding of non-disclosure.

 Next the defendant assumes that the court must restrict the statement of claim to the relief asked and hold that since the claim seeks assignment of the Freeman patent, such relief would be futile because the Freeman patent would be invalid if found to be an invention disclosed to the defendant by the plaintiff. But a statement of claim is not measured by the relief asked. If an adequate cause of action exists, the court may give the proper remedy regardless of the prayer of the complainant. If it should be found that disclosures were made which led directly to the Freeman patent, the court might, depending on the circumstances, determine the respective interests of parties, give effect to the contract existing between the parties when the disclosures were made, issue an injunction, or might find the patent invalid. The remedy granted would not necessarily be restricted to assignment. There is a prayer for general relief at the end of the complaint.

"There is nothing in the intricacy of equity pleading that prevents the plaintiff from obtaining the relief under the general prayer, to which he may be entitled upon the facts plainly stated in the bill. There is no reason for denying his right to relief, if the plaintiff is otherwise entitled to it, simply because it is asked under the prayer for general relief and upon a somewhat different theory from that which is advanced under one of the special prayers." Lockhart v. Leeds, 195 U.S. 427, 436, 25 S. Ct. 76, 79, 49 L.Ed. 263.

"If a bill states a cause of action entitling complainant to equitable relief on any theory of the case, a court may grant it under a prayer for general relief, though other specific relief may be mistakenly prayed for." Young & Vann Supply Co. v. Gulf, F. & A. Ry. Co., 5 Cir., 5 F.2d 421, 423.

"The rule is now general that at a trial upon the merits the suitor shall have the relief appropriate to the facts that he has pleaded, whether he has prayed for it or not." Bemis Bro. Bag Co. v. United States, 289 U.S. 28, 34, 53 S.Ct. 454, 456, 77 L.Ed. 1011.

" * * * Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Rule 54(c), Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

 The complaint definitely alleges a relationship of confidence and trust. Such a relationship is denied in the answer. As stated before, this raises an issue of fact. The court still inclines to the view that a motion for judgment on the pleadings prompts, if it does not require, a consideration of all the pleadings, even though the motion is based upon the sixth exception of Rule 12(b), i. e., "failure to state a claim upon which relief can be granted". A strict construction of that rule would require such a motion to be made before other pleading. The court, however, has considered the objection contained in the motion as not waived by the answer but has considered it with the answer.

 But, even if the defendant's contention is accepted and we consider the motion as questioning the sufficiency of the complaint without regard to the answer, still the result is the same. The motion in that case admits all the essential allegations of the complaint. The court must then assume the truth of the allegations that a relationship of confidence and trust existed between the plaintiff and the defendant,

that the plaintiff was invited into the defendant's plant to demonstrate its methods of curing tires, and did then and from time to time thereafter reveal to the defendant " * * * the methods of the patents in suit and alternative methods within the scope thereof * * * taught the defendant herein and its employees, executives and workmen the principles of the patent in suit, which included the principle of utilizing a portion of the heat of the steam to increase or maintain the pressure * * taught the defendant herein the alternative use of steam and air as alternative media for the practice of said methods and processes of the patents in suit * * * disclosing to the defendant herein a large amount of technical data in carrying out the processes of the patents in suit and alternative processes within the scope thereof * * * did specifically disclose the use of steam and air in the practice of his methods and processes * * * and disclosed variations thereof".

The complaint describes joint and co-operative experiments and research. Under such allegations many different conditions might be proved which would entitle the plaintiff to different relief. The evidence might produce the feeling expressed by Judge Kenyon in Larson v. Crowther, 8 Cir., 26 F.2d 780, 789: "We should have been much better satisfied if the parties had united in applications for joint patents, for both contributed to the development," etc. In this case, as in that case, the question of joint patent has not been raised. But this case is still in the trial court and the question therefore might yet be raised. It is mentioned to show the breadth and scope of the second statement of claim. Joint ownership of patents is recognized in the case of DeLaski & Thropp Circular Woven Tire Co. v. W. R. Thropp & Sons Co., D. C., 218 F. 458, and at page 464 the court specifies what is necessary to constitute joint inventors, and it was held that a patent granted to the assignee of two applicants therefor as joint inventors is valid, although one was the sole inventor. Might not the reverse be also true and a patent held good which was granted to one even though two were the joint inventors? In the case of Klein v. American Casting & Mfg. Corp., 2 Cir., 87 F.2d 291, the rights of joint inventors were recognized and it was held that the defense of lack of joint invention would be regarded with disfavor.

This court is, of course, not now deciding that this case involves joint invention. Nor, if such should be the fact, that this court would order an assignment of an interest in the patent. Such question can be answered if and when it arises. The court is merely interpreting the second statement of claim to determine if by any possibility it might embrace a cause upon which relief can be granted. But this court is now emphatically declining to allow the dialectic of technical patent law to place the subject of invention beyond the pale of general equitable jurisdiction. The word "patent" generally covers two concepts: invention and the certificate of ownership of the franchise granted by law to the inventor. Such certificates or letters patent are, of course, invalid if obtained on false oath by one not the inventor, and any assignment of them to a would-be purchaser, as in the case of Kennedy v. Hazelton, 128 U.S. 667, 9 S.Ct. 202, 32 L.Ed. 576, would be futile and void. But that does not preclude a court from determining the ownership of invention and the franchise to which the inventor is entitled. And a court of equitable jurisdiction, with the parties before it, has ample authority to make orders and decrees for the protection of interests determined.

"An undisclosed invention does not need a patent to protect it from disclosure by breach of trust." Becher v. Contoure Laboratories, Inc., et al., 279 U.S. 388, 49 S.Ct. 356, 73 L.Ed. 752.

The words of Justice Holmes in that case are particularly pertinent. He said (page 391 of 279 U.S., page 357 of 49 S.Ct., 73 L.Ed. 752): "Oppenheimer's right was independent of and prior to any arising out of the patent law, and it seems a strange suggestion that the assertion of that right can be removed from the cognizance of the tribunals established to protect it by its opponent going into the patent office for a later title. It is said that to establish Oppenheimer's claim is to invalidate Becher's patent. But, even if mistakenly, the attempt was not to invalidate that patent but to get an assignment of it, and an assignment was decreed. Suits against one who has received a patent of land to make him a trustee for the plaintiff on the ground of some paramount equity are well known."

If, while two men are engaged in a joint enterprise, one of them should surreptitiously appropriate valuable property de-

veloped or discovered, and fabricate a bill of sale in his own name, would a court of equity refuse jurisdiction of the other man's petition for an assignment of his interest because the bill of sale is a forgery and therefore invalid? Should the question be answered differently if the property appropriated is an invention and, instead of a bill of sale, the defendant has letters patent?

 "Patents are property and entitled to the same rights and sanctions as other property". Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122; Seymour v. Osborne, 78 U.S. 516, 533, 11 Wall. 516, 20 L.Ed. 33.

In the case of Allen-Qualley Co. v. Shellmar Products Co., D.C., 31 F.2d 293, 296, the court said: "The question is not one of contracts, of patents, or of professional conduct of counsel. It is a question of the validity in equity of the acts of defendant in receiving in confidence, pending making contractual relationship, under an agreement to treat the same as confidential, a disclosure of the plaintiff's secrets, using such disclosure to locate a patent". And the court, at page 297 of 31 F.2d held: "* * * the patent itself is therefore imbued with a trust relationship. That the court has the jurisdiction to compel the surrender of the said patent to the plaintiff upon repayment to the defendant of the purchase price expended by it seems to follow from the reasoning of the United States Circuit Court of Appeals in National Wire Bound Box Co. v. Healy [7 Cir.], 189 F. 49." Baker Oil Tools v. Burch, 10 Cir., 71 F.2d 31; Murjahn v. Hall, C.C., 119 F. 186.

In view of the foregoing authorities the court adheres to its view that the allegations of the second statement of claim do not fail to state a claim upon which relief can be granted, and the petition for rehearing is therefore dismissed.

 The determination of the motion for judgment on the pleadings, as it applies specifically to the first and third statements of claim, is deferred until the trial in accordance with Rule 12(d) Rules of Civil Procedure. The evidence which will be produced at the trial of the second statement of claim will no doubt bear upon the state of the art, the disclosures made, the history of the developments, and the relationship of the parties, and such evidence would help the court to appraise the claims and determine their scope. Karl Kiefer Mach. Co. v. United States Bottlers Machy. Co., 7 Cir., 113 F.2d 356, 357. Moreover, some order as to the first or third statements might be found necessary in order to protect rights as they then may be found to exist. As a rule, no legal point (going to less than the whole case) should be decided in advance of final hearing, unless such decision is clearly indicated by requirements of the case. Andrew Jergens Co. v. Bonded Products Corp., D.C., 9 F.2d 114. The determination of the first and third statements of claim should require very little evidence beyond the exhibits and the testimony offered with reference to the issue raised by the second statement of claim and the answer.